IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEWELL D. BEWLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:06CV1176 AGF |
| | ) | |
| CYNDI PRUDDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner Jewell Bewley for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] A jury convicted Petitioner on October 25, 2002, of first-degree child molestation, first-degree statutory sodomy, and two counts of first-degree endangering of a child. She was sentenced to terms of imprisonment of seven years, 30 years, five years, and five years, respectively; the last three sentences were to run consecutively, for a total term of 40 years imprisonment. The convictions arose out of Petitioner's sexual abuse, along with her husband, of two mentally handicapped children placed by the State in her and her husband's part-time care.

For habeas relief, Petitioner claims that her federal constitutional rights were violated in the following ways:

(1) Defense counsel rendered ineffective assistance by proceeding with a trial strategy of actual innocence, after previous counsel had pursued a

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

pretrial strategy of duress;

(2) One of the jurors was biased because she could not decide whether she could set aside her feelings;

(3) Defense counsel did not fully advise Petitioner about her right to testify; and

(4) The judge, prosecutor, and jury treated Petitioner unfairly: the judge and prosecutor were involved in the sentencing of Petitioner's husband, and jurors "were known by" Petitioner and her husband.

Respondent argues that habeas relief should be denied because Petitioner procedurally defaulted all but her third claim, and the state courts' adjudication of that claim was reasonable. For the reasons set forth below, federal habeas relief shall be denied.

## BACKGROUND

### Trial and Direct Appeal

The record establishes that Petitioner's initial attorney from the public defender's office decided to pursue a defense of duress - that Petitioner acted out of fear of her husband. This attorney examined the young victims based on this theory at their pretrial in camera video depositions ordered by the trial court. Two other attorneys (Pat McMenamin and Christopher Davis) from the same office thereafter took over the case prior to trial and decided to pursue the defense that Petitioner did not engage in the criminal acts.

During voir dire, the prosecutor asked if anyone would not be able to listen to the State's evidence due to the fact that the case was about the sexual abuse of mentally handicapped children, and would hold it against the State for presenting such matters to

them. The following exchange ensued between the prosecutor and Juror No. 15:

> JUROR NO. 15: I'm not sure about my feelings. When it comes to a child, and particularly a retarded child, I am afraid I would be biased toward the child, for the child.
>
> PROSECUTOR: And I recognize -- I think that that's a fair feeling. Let me ask you this, you just said you're not for sure.
>
> JUROR NO. 15: I'm not for sure.
>
> PROSECUTOR: The -- The Judge will give the jury instructions along the way during the trial and then at the end of the trial, and a lot of us have personal feelings such as this. All right? I guess my question is, do you think, for the purposes of this trial, that you could set aside those feelings and follow the instructions?
>
> JUROR NO. 15: I would try. . . . I mean . . . how does anybody know for sure, until they hear it, if they could set it aside?
>
> PROSECUTOR: Okay. And what I'm asking you to set aside, of course, is just kind of this personal inclination you have, maybe, to be protective for retarded children and to -- whatever the issues are. I'm asking you, do you think you can -- you don't know that you can set those feelings aside and just listen to the evidence and make a decision based on the evidence?
>
> \* \* \*
>
> JUROR NO. 15: I -- I believe probably I could. . . . I hate to say a definite yes or no.

(Resp. Ex. 1 at 91-93.) Later during voir dire, Juror No. 15 stated that she did not think that everybody charged with a crime is necessarily guilty, and that she thought that in some cases small or mentally handicapped children might say something that was not true if asked a leading question or out of a fear of not agreeing with who was talking to them. Id. at 122, 139-40.

3

Neither side moved to strike Juror No. 15 for cause or peremptorily. Another venireperson (No. 34) was struck for cause because when the panel was asked if they could listen to the evidence and separate their feelings about the crimes in question from the current case, she answered, "I honestly don't think I could sit there and make a fair decision." Id. at 94

The State presented strong evidence of Petitioner's guilt. Petitioner did not testify. The Court will not recount the underlying facts of the case, however, for they are not necessary to the Court's review of Petitioner's habeas claims. On direct appeal, Petitioner argued that the trial court erred in two ways: (1) denying Petitioner's pretrial motion to reopen the videotaped examination of one of the victims, and her motion the first day of trial to redact the victims' videotaped cross-examination, after Petitioner's new counsel changed the defense theory from duress to actual innocence; and (2) denying her motion for a mistrial when a witness for the state referred to previous uncharged sexual misconduct by Petitioner with another child. (Resp. Ex. 7.) The Missouri Court of Appeals rejected both points. (Resp. Ex. 9.)

**State Post-conviction Proceedings**

In an amended motion for post-conviction relief, Petitioner raised three claims, only two of which were appealed following the denial of the post-conviction motion. The two claims raised on appeal were: (1) that defense counsel was ineffective if failing to strike for cause or peremptorily Juror No. 15, due to her indication during voir dire that she would not be able to put aside her personal feelings about mentally handicapped

4

children; and (2) defense counsel was ineffective in failing to inform Petitioner that the ultimate decision of whether or not to testify was hers. (Resp. Ex. 11 at 9-28, Resp. Ex. 12.)[2]

The trial court held an evidentiary hearing on September 23, 2004, at which Petitioner and one of her trial counsel, Mr. McMenamin, testified. With regards to the two claims pursued on post-conviction appeal, Petitioner testified that prior to trial, her attorney informed her "in regards to" her right to testify, that he advised her not to take the stand because the prosecutor "was out to burn" her, but that he did not tell her that it was ultimately her decision whether or not to do so. She further testified that she wanted to testify at trial. (Resp. Ex. 10 at 2-6.)

Mr. McMenamin testified that at the time of Petitioner's trial, he had been with the public defender's office for about eight years. He testified that in Petitioner's case, he and co-counsel thought the question of whether or not Petitioner should testify was "borderline," but that as the evidence came in they decided that it would not be a good idea and advised Petitioner to that effect. He testified further that although he did not have an exact recollection of telling Petitioner specifically that it was her decision whether or not to testify, he was sure that he did -- that counsel had discussed the matter with her at length and he felt she was aware of that. He further testified that it was his normal practice to discuss with his clients their right to testify. Id. at 7-13, 25-26.

---

[2] The remaining claim was that defense counsel were ineffective for shifting from the defense of duress to the defense of actual innocence.

With respect to Juror No. 15, Mr. McMenamin testified that he had no recollection of Juror No. 15 or why he and co-counsel chose not to peremptorily challenge her. Petitioner's post-conviction counsel read the above-quoted comment of Juror No. 15, "I'm not sure about my feelings. When it comes to a child, and particularly a retarded child, I am afraid I would be biased toward the child, for the child," and Mr. McMenamin stated, "she basically said that she couldn't be impartial." When asked in follow-up if he believed that a juror who said she would be biased in favor of a retarded child could be fair in a case where the alleged victims were mentally retarded children, he responded:

> It depends. And I'm sorry, but I really don't recall in this particular case what our thinking was or whether that was just an oversight on our part. Looking at what you've just related in a vacuum, it would appear that that's somebody we probably should have struck for cause or at least peremptorily struck.

Mr. McMenamin further testified that he did not think the "rehabilitation" of Juror No. 15 was sufficient and that the trial judge would have granted a motion to strike her for cause. He explained that in general, when trying to pick a jury, he would look to all the answers that a venireperson gave, as well as other things, such as whether a venireperson made good eye contact with him. Id. at 18-19, 26-27.

The trial court[3] found that Juror No. 15's answers during voir dire did not rise to the level of disqualification, and that defense counsel was thus not ineffective for failing to move to strike her for cause. The court then stated that Petitioner failed to establish

---

[3] The same judge who presided over Petitioner's trial presided over the post-conviction action.

6

that defense counsel's actions were not strategic, or that Petitioner was prejudiced, as she failed to show that the verdict would have been different had Juror No. 15 been struck and another juror placed on the jury. The court did not find Petitioner's testimony that counsel did not tell her that it was her decision whether or not to testify to be credible, and found counsel's testimony on the matter was credible. Accordingly, the court also rejected this claim. Id. at 29-34.

The state appellate court, in affirming the post-conviction court's decision, stated that although Juror No. 15 "initially indicated a potential bias toward mentally handicapped children and stated that she could not be absolutely certain she would be able to set aside her feelings until she heard all of the evidence," she also stated that she would try to do so and that she believed she probably could. The appellate court found that "when read in context, [Juror No. 15]'s answers indicate no bias or prejudice on her part." Accordingly, Petitioner could show neither deficient performance by defense counsel nor prejudice under the standard of Strickland v. Washington, 466 U.S. 668, 694 (1984), for establishing unconstitutional ineffective assistance of counsel.

The appellate court stated that it was confirmed in its belief by its review of the discussions between the prosecutor, defense counsel, and trial judge regarding strikes of potential jurors, as well as the answers of other potential jurors. The appellate court found that these discussions showed that the prosecutor, defense counsel, and trial judge all "viewed [Juror No. 15's] 'probably' statement of setting her feelings aside as an unequivocal showing of no bias." The appellate court also stated that "other factors no

doubt affected the decision not to strike [Juror No. 15], i.e., voice inflections, emphasis on certain words, and her overall demeanor." The court concluded that Petitioner failed to demonstrate that Juror No. 15 was a biased juror, and that thus defense counsel could not be faulted for failing to strike her and Petitioner could not show prejudice from counsel's failure to do so. (Resp. Ex. 14.)

The Missouri Court of Appeals held that the claim regarding Petitioner's right to testify turned on credibility, and that the trial court's credibility determination would not be disturbed. The court added that another reason this claim was without merit was because at the post-conviction hearing, Petitioner presented no evidence regarding what her trial testimony would have been. Id.

## DISCUSSION

**Procedural Default**

Respondent correctly argues that this Court is procedurally barred from considering Petitioner's first and fourth claims because Petitioner procedurally defaulted those claims in state court, and has not presented a legally sufficient basis to excuse this default. Under the doctrine of procedural default, a state prisoner is generally barred from obtaining federal habeas relief on claims that were procedurally defaulted in state court, that is, claims that were not properly presented through "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Wemark v. State, 322 F.3d 1018, 1020-21 (8th Cir. 2003).

A Missouri inmate procedurally defaults claims which could have been but were

8

not raised on appeal from the denial of a motion for post-conviction relief. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir. 2006); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (same). Here, as noted above, the only two claims raised by Petitioner in her post-conviction appeal were the claims regarding defense counsel's failure to move to strike Juror # 15, and failure to fully advise Petitioner as to her right to testify.

A petitioner may avoid a procedural default if he can demonstrate cause for the default and prejudice resulting from it, or if he can demonstrate a colorable claim of factual innocence. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003). Here, Petitioner does not allege, nor does the record suggest, a legally sufficient excuse for his procedural default, i.e. for failing to present his federal grounds for relief to the state appellate court. The Court notes that ineffective assistance of post-conviction counsel, either in the motion court or on appeal, cannot provide cause for a procedural default. See Interiano v. Dormire, 471 F.3d. 854, 857 (8th Cir. 2006).

The Court accordingly turns to consider the merits of Petitioner's two properly preserved claims involving juror bias and counsel's advice regarding the right to testify.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions." Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004) (en banc).

A decision by a state court is "contrary to" clearly established federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at' a different result." Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (citation omitted).

A federal habeas court must "presume that the state court's findings of fact are correct, and the prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

**Counsel's Advice Regarding the Right to Testify**

Petitioner claims that defense counsel advised her not to testify and did not inform her that the decision was up to her. This ground for habeas relief involves two constitutional rights -- the right to effective assistance of defense counsel, and the right to

10

testify. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must not only show that counsel's performance was deficient, but that she was prejudiced by her counsel's incompetence. Strickland, 466 U.S. at 694. A criminal defendant has a constitutional right to testify at trial. Rock v. Arkansas, 483 U.S. 44, 49 (1987). Only the defendant may waive her right to testify and the waiver of this fundamental constitutional guarantee must be knowing and voluntary. Berkowitz v. Minnesota, 505 F.3d 827, 828 (8th Cir. 2007) (per curiam), cert. denied, 128 S. Ct. 1454 (2008); Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998).

    Here, Plaintiff acknowledged at the post-conviction hearing that her attorney informed her of her right to testify. Her complaint is that after advising her not to take the stand, he did not tell her that it was ultimately her decision whether or not to do so. Defense counsel testified that counsel and Petitioner discussed the matter at length and that he felt sure that she understood that the decision was hers. The state motion court found that counsel's testimony on the matter was credible, and that Petitioner's testimony to the contrary was not credible. The state appellate court deferred to these credibility findings. Upon review of the record, this Court concludes that Petitioner has not shown the state court's credibility determination was an "unreasonable determination of the facts in light of the evidence presented" at the post-conviction hearing. Nor has she shown that the state courts misapplied federal law on the matter. Accordingly, federal habeas relief on this claim is not available. See Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006) (affirming the denial of habeas relief where state motion court found that counsel's

testimony that he advised the petitioner of his right to testify was credible, and that the petitioner's testimony to the contrary was not credible); Frey, 151 F.3d at 898 (holding that habeas petitioner voluntarily and knowingly waived his right to testify, despite his claim that he believed counsel alone had the power to decide whether he would testify, where counsel testified that he informed petitioner of his right to testify, but advised against it and that petitioner consented to this advice); Washington v. Kemna, 16 F. App'x 528, 530 (8th Cir. 2001) (per curiam); Jamison v. Dormire, No. 03CV1401 HEA, 2007 WL 763954, at *2 (E.D. Mo. Mar. 9, 2007); see also Berkowitz, 505 F.3d at 828 (declining to adopt a bright-line rule requiring all criminal defendants who do not testify to waive the right to testify on the record).

**Alleged Juror Bias**

The Court notes initially that Petitioner presented this claim to the state post-conviction court as a claim of ineffective assistance of defense counsel for failing to strike Juror No. 15, whereas here she appears to present the claim as a straight due process claim. To prevail on a claim of ineffective assistance of counsel based on trial counsel's failure to strike a biased juror, a habeas petitioner must show that the juror was actually biased against him. Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995) (citing Smith v. Phillips, 455 U.S. 209, 215 (1982)). Indeed, the state appellate court correctly approached the claim this way. This Court, accordingly, rejects Respondent's argument that it should consider Petitioner's claim as procedurally defaulted.

On the merits, the Court concludes that the state courts' adjudication of this claim

was legally and factually reasonable. The Supreme Court has clearly established that the Constitution demands that a criminal defendant be afforded an impartial jury. See Morgan v. Illinois, 504 U.S. 719, 729-30 (1992); Nicklasson v. Roper, 491 F.3d 830, 834 (8th Cir. 2007).

> The Sixth Amendment guarantees the defendant the right to trial by an impartial jury. Impartiality is presumed so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case. The test for assessing impartiality asks whether the prospective juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

U.S. v. Wright, 340 F.3d 724, 733 (8th Cir. 2008) (citations omitted). "Although removal of a juror is appropriate if a juror has formed an opinion as to the issue to be tried, it is sufficient if the juror can lay aside his pretrial impression or opinion and render a verdict based on the evidence presented in court." U.S. v. Evans, 272 F.3d 1069, 1079 (8th Cir. 2001) (citations omitted). The failure of defense counsel to strike a biased juror is presumed prejudicial. Sanders v. Norris, 529 F.3d 787, 791 (8th Cir. 2008).

Here, the Court does not believe that Mr. McMenamin's testimony at the post-conviction hearing supports a finding that failing to strike this juror was a matter of trial strategy -- he simply did not remember why Juror No. 15 was not challenged, and stated that it might have been an oversight. And the Court believes that a close question is presented as to whether the record supports the state appellate court's conclusion that Juror No. 15 was not biased.[4] The Court, however, cannot say that the Missouri courts'

---

[4] The Court notes that adjudication of this claim by the state courts was not based on a factual or credibility determination entitled to a presumption of correctness.

adjudication of this claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the voir dire and the testimony at the post-conviction hearing.  Juror No. 15 did not express a pre-trial opinion as to Petitioner's guilt, and her expressed feelings of sympathy towards mistreated mentally handicapped children is not particular to her nor was it based on any personal bad experience.  The state appellate court was reasonable in determining that, in the context of overall voir dire, Petitioner's statement that she believed that she probably could set aside her feelings qualified her as an impartial juror.[5]  Petitioner's claim, whether viewed as a due process claim or a claim of ineffective assistance of counsel, therefore fails.  See Knese v. Roper, No. 4:03-CV-1082 (CEJ), 2006 WL 2711635, at *3 (E.D. Mo. Sept. 21, 2006) (holding that in the absence of a finding of actual juror bias, the petitioner could not establish that the state court's determination that petitioner did not show prejudice resulting from defense counsel's failure to try to strike two allegedly biased jurors was not contrary to or an unreasonable application of Strickland).

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief.  Furthermore, the Court does not believe that  reasonable jurists might find the Court's

---

[5]  The Court notes that one of the instructions in this case instructed the jury as follows:  "Faithful performance by you of your duties as jurors is vital to the administration of justice.  You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case." (Resp. Ex. 5 at 60.)

assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jewell Bewley for federal habeas corpus relief be **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of September, 2009.